**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MechoShade Systems, Inc., | No. CV-10-02470-PHX-NVW |
| Plaintiff, | **ORDER** |
| vs. | |
| Draper, Inc.; Electronic Solutions, Inc.; and Hunter Douglas, Inc., | |
| Defendants. | |

Before the Court is Defendants' Rule 12 Motion to Dismiss the First Amended Complaint, Stay, or Transfer Pursuant to 28 U.S.C. § 1404(a) (Doc. 21). The Court set this motion for oral argument, but upon further reflection, determined that the motion could be appropriately decided on the briefs alone.

The Court will grant the motion and dismiss this case without prejudice in favor of previously filed actions in Colorado and Indiana. The intent of this order is to leave it to the Colorado and Indiana courts, where these claims were first filed, to determine whether either or both of those actions should be litigated in a different forum.

**I.    Backgrounds**

Plaintiff MechoShade Systems, Inc., is a New York corporation that manufactures window coverings at a facility in Arizona. It owns patents developed by one of its principal officers, Joel Berman, that relate to these window coverings. One such patent is U.S. patent

number 6,164,428, titled "wrap spring shade operator," which describes a mechanism within a window shade mounting bracket intended to ensure smooth raising and lowering of manually operated roll-up window shades. The Court will refer to this as the "bracket patent." Another patent is U.S. patent number 7,417,397, titled "automated shade control method and system," which describes a digitally controlled, motor-driven window shade system that automatically raises or lowers the shades based on an algorithm that can respond to weather conditions, building temperature, and so forth. The Court will refer to this as the "automation patent."

Defendant Draper, Inc., is an Indiana corporation with its principal place of business in Indiana. Draper competes with MechoShade in the window covering market. In late August 2010, MechoShade's Berman contacted persons at Draper and accused Draper of wrongdoing with respect to MechoShade's intellectual property. According to Berman, he discussed Draper's possible infringement of both the bracket patent and the automation patent. Draper, other the other hand, says it discussed only the bracket patent with Berman. In any event, on September 1, 2010, Draper and MechoShade executed a "Rule 408 Settlement Negotiation Agreement." The agreement's recitals state, in relevant part:

> Berman and MechoShade have raised several issues they want to discuss with Draper.
>
> While Draper is not clear on the issues, it agrees to discuss said issues with MechoShade and Berman.
>
> In the process of Settlement Discussion, Draper, MechoShade, and Berman anticipate exchanging confidential information and providing information that may be prejudicial during any litigation between them.

(Doc. 1-1 at 2.) The agreement therefore goes on to establish procedures for exchanging confidential information. The agreement does not prohibit either side from suing the other, but states that "Settlement Discussions shall not be used for any purpose and litigation between the Parties." (*Id.* at 3.) MechoShade alleges that it and Draper subsequently entered into an oral agreement not to sue each other without reasonable warning. Exactly when this

1  oral agreement arose is not specified.

2       MechoShade alleges that, for the first few weeks of September 2010, it and Draper
3  had substantive discussions about Draper's products. Although no party's narrative is
4  explicit on this subject, it appears that these discussions with Draper involved both the
5  bracket patent and the automation patent, and revealed that Draper markets automated
6  window shade systems made by Defendant Electronic Solutions, Inc., which refers to itself
7  as "ESI." ESI is a Colorado corporation with its principal place of business in Colorado. It
8  is also a wholly-owned subsidiary of Defendant Hunter Douglas, Inc., a Delaware
9  corporation with its principal place of business in New Jersey.

10      Berman contacted ESI on September 21, 2010, and accused it of infringing the
11 automation patent. The record is not clear about what happened after this. According to ESI,
12 Berman then began contacting ESI's potential customers and threatening legal action based
13 on the automation patent. MechoShade seems to deny this, and instead alleges that,
14 sometime around September 27, 2010, Draper asked MechoShade to prepare detailed claim
15 charts comparing Draper's products with the claims of both the bracket and automation
16 patents. The record does not disclose whether ESI likewise asked for such claim charts.
17 Nonetheless, MechoShade claims that it then began an intensive study of Draper's products
18 as part of its effort to prepare claim charts.

19      After Draper requested claim charts from MechoShade, apparently neither Draper nor
20 ESI had any contact with MechoShade until November 10, 2010. On that date, Draper filed
21 a declaratory judgment action against MechoShade in the Southern District of Indiana, asking
22 the court to declare that Draper does not infringe MechoShade's bracket patent or trade dress,
23 and that MechoShade's bracket patent is invalid. *See Draper, Inc. v. MechoShade Sys., Inc.*
24 *et al.*, No. 1:10-cv-1443-SEB-TAB (S.D. Ind.). Also on that date, ESI, Hunter Douglas, and
25 Draper filed a declaratory judgment action against MechoShade in the District of Colorado,
26 asking the court to declare that they do not infringe MechoShade's automation patent, and
27 that MechoShade's automation patent is invalid. *See Elec. Solutions, Inc. et al. v.*
28 *MechoShade Sys., Inc.*, No. 1:10-cv-02750-WDM-MJW (D. Colo.).

- 3 -

On November 12, 2010, MechoShade filed this lawsuit against Draper, ESI, and Hunter Douglas, which will be referred to collectively as "Defendants." MechoShade asserts causes of action for patent infringement (both the bracket and automation patents), trade dress infringement, unfair competition, false advertising, and breach of contract (*i.e.*, the Rule 408 Settlement Negotiation Agreement and the oral contract not to sue). Defendants moved to dismiss, stay, or transfer this case in light of the previously filed cases in Colorado and Indiana. The motion has been fully briefed, and is now ripe for ruling.

**II.    Analysis**

The federal courts have embraced "the general principle [of] avoid[ing] duplicative litigation" amongst themselves. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976). One way the courts realize this principle is through the "first-to-file rule," meaning that when two cases in two districts raise substantially the same issues among substantially the same parties, "[t]he general rule favors the forum of the first-filed action." *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008). Therefore, this Court "has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy." *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997).

Federal Circuit law controls the first-to-file rule in patent cases such as this, where an action for infringement and a declaratory judgment action for non-infringement are pending in different districts. *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345–46 (Fed. Cir. 2005); *Lab. Corp. of Am. v. Chiron Corp.*, 384 F.3d 1326, 1331 (Fed. Cir. 2004). The Federal Circuit's overriding concern in this area of law is to ensure that "the case will be heard [in] or transferred to the most convenient or suitable forum" and thereby "reduce the incentives for a race to the courthouse." *Micron*, 518 F.3d at 905. Accordingly, "[t]he trial courts have discretion to make exceptions to [the first-to-file rule] in the interest of justice or expediency, as in any issue of choice of forum." *Id.* at 904.

The Federal Circuit in *Micron* specifically directed the district courts to examine the factors normally considered when faced with a motion to transfer under 28 U.S.C. § 1404(a).

- 4 -

*Id.* at 904–05. This calls for a *renvoi*-like return to regional circuit law because the Federal Circuit derives factors to consider under § 1404(a) from the law of the regional circuit. *See, e.g.*, *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010); *In re Acer Am. Corp.*, 626 F.3d 1252, 1254 (Fed. Cir. 2010). In addition, Federal Circuit cases regarding the first-to-file rule have also endorsed considering "a party's intention to preempt another's infringement suit," *Micron*, 518 F.3d at 904, "the possibility of consolidation with related litigation," *id.*, whether the parties were in the midst of extra-judicial negotiations, *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996), *abrogated on other grounds by MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), and whether "forum shopping alone motivated the choice of sites for the first suit," *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).

The foregoing reflects a multi-factor test typical of modern American law. However, the Federal Circuit has left unanswered an important question: which court should consider these factors? This question deserves a definite answer because, just as "the general principle [of] avoid[ing] duplicative litigation," *Colo. River Water Conservation Dist.*, 424 U.S. at 818, is mocked if more than one court considers the same substantive suit, it is similarly mocked if more than one court considers which court should consider the substantive suit. Yet if the second-filed (or as is the case here, third-filed) court can weigh the factors, such wasteful duplication of resources would frequently result because many patent holders (as declaratory judgment defendants) will file a § 1404(a) motion to transfer with the first-filed court and then hedge their bets (as natural plaintiffs) by filing a *Micron*-based motion — likewise invoking § 1404(a) — with the second-filed court.

The question of which court should consider the § 1404(a) and other factors similarly deserves an answer because Congress has written the federal transfer statutes to accommodate puts and not calls, so to speak. This Court cannot order courts of another district to transfer their cases here. This Court could enjoin the parties from litigating elsewhere, *see generally Lab. Corp.*, 384 F.3d at 1327–33 (discussing injunctions against proceeding in a different forum), but the wisdom of exercising that authority as a substitute

- 5 -

for § 1404(a) is questionable. Unusual cases may exist where the second-filed court could appropriately issue such an injunction — a particularly egregious and oppressive instance of forum shopping, for example — but the usual case should be left to the procedure established by § 1404(a). Otherwise, "'[t]he administration of justice would be chaotic indeed,'" *Genentech, Inc. v. GlaxoSmithKline LLC*, No. 5:10-cv-04244-JF/PVT, 2010 WL 4923954, at *4 (N.D. Cal. Dec. 1, 2010) (quoting *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 46–47 (2d Cir. 1961) (alteration in original)), as multiple district courts consider the same factors and inevitably, in some instances, arrive at incompatible conclusions.

The Court therefore concludes that in a "first-to-file" dispute, the second-filed court should defer any analysis of § 1404(a) or other transfer factors to the first-filed court. Although unusual circumstances may justify departing from this principle, this case presents no such unusual circumstances. The Court will therefore defer to the Colorado and Indiana courts.[1] By so doing, the Court does not mean to suggest that Arizona is the wrong place for this litigation. The Court merely concludes that the question should not be decided here.

IT IS THEREFORE ORDERED that "Defendants' Rule 12 Motion to Dismiss the First Amended Complaint, Stay, or Transfer Pursuant to 28 U.S.C. § 1404(a)" (Doc. 21) is GRANTED.

///

///

---

[1]The fact that there are, in a sense, *two* first-filed courts is not troubling. The Court agrees with Defendants' argument that each of these suits is an analytically distinct action, rather than MechoShade's claim that the bracket patent and automation patent are so closely related that two lawsuits necessarily create piecemeal litigation. The bracket patent addresses the problem of jerky operation in manually adjusted window blinds. The automation patent sets up an elaborate system of computer-directed, motor-controlled window blinds that predict and respond to changes in sunlight, weather, and so forth. The only thing these patents have in common is window blinds. Thus, the Indiana action is the first-filed action with respect to the bracket patent, and the Colorado action is first-filed with respect to the automation patent. The Court expresses no opinion on whether consolidating both cases (in Arizona or otherwise) would nonetheless promote judicial economy.

1  IT IS FURTHER ORDERED that this case is DISMISSED without prejudice in favor
2 of the Colorado and Indiana actions.
3  DATED this 26th day of April, 2011.

/s/ Neil V. Wake
Neil V. Wake
United States District Judge